Matter of Daniel J. Lynch, Inc. v Board of Educ. of the Maine-Endwell Cent. Sch. Dist. (2025 NY Slip Op 25031)

[*1]

Matter of Daniel J. Lynch, Inc. v Board of Educ. of the Maine-Endwell Cent. Sch. Dist.

2025 NY Slip Op 25031

Decided on February 13, 2025

Supreme Court, Broome County

Blaise, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on February 13, 2025
Supreme Court, Broome County

In the Matter of the Petition of Daniel J. Lynch, Inc.; KELLY LYNCH, Individually, and as a Taxpayer; SLAVIK & CO. INC.; GEORGE J. SLAVIK, JR., Individually, and as a Taxpayer; ANDREW R. MANCINI ASSOCIATES, INC.; LOUIS N. PICCIANO & SON, INC., and WILLIAM H. LANE INCORPORATED, Petitioners,

against
Board of Education of the Maine-Endwell Central School District; the MAINE-ENDWELL CENTRAL SCHOOL DISTRICT; and SMITH SITE DEVELOPMENT, LLC, For a Judgment and Order Pursuant to Article 78 of the Civil Practice Law and Rules declaring Void, Unenforceable and Illegal a contract awarded July 2, 2024 to SMITH SITE DEVELOPMENT LLC to perform work for the Maine-Endwell Central School District and mandating repayment of contract funds paid on the basis the procurement and contract award was non-compliant, illegal and in violation of General Municipal Law § § 101, 103 (1), (2), (16), 103-d (2) and State Finance Law § 135 and 137., Respondents.

Index No. EFCA2024002624

COUNSEL FOR PETITIONERS:
HINMAN HOWARD & KATTELL LLP BY: PAUL T. SHEPPARD, ESQ.
P.O. BOX 5250
80 EXCHANGE STREET
BINGHAMTON, NY 13902
COUNSEL FOR SCHOOL DISTRICT:
ALARIO & FISCHER, P.C.
BY: HARRIS LINDENFELD, ESQ.
102 WEST SENECA STREET, SUITE 210
MANLIUS, NY 13104
COUNSEL FOR SMITH SITE:
BARCLAY DAMON, LLP
BY: JAMES P. DOMAGALSKI, ESQ.
200 DELAWARE AVENUE, SUITE 1200
BUFFALO, NY 14202

Oliver N. Blaise, III, J.

Petitioners, Daniel J. Lynch, Inc., Kelly Lynch, Slavik & Co. Inc., George J. Slavik, Jr., Andrew R. Mancini Associates, Inc., Louis N. Picciano & Son, Inc., and William H. Lane Incorporated (hereinafter collectively "Petitioners"), have filed this special proceeding pursuant to CPLR Article 78 seeking, among other things, to set aside a construction contract awarded by respondents Board of Education of the Maine-Endwell Central School District and the Maine-Endwell Central School District (hereinafter "the School District") and Smith Site Development, LLC (hereinafter "Smith") pursuant to the General Municipal Law and State Finance Law. More specifically, the petition seeks to set aside the contract for violation of competitive bidding requirements through the use of a "piggyback" contract for a construction project. Respondents oppose the petition in all respects.
BACKGROUND
In December 2022, voters approved a $64 million bond referendum to support capital improvements at the School District's various buildings and facilities over the span of five years, from 2023 through 2027 (hereinafter "the Project"). The Project was to occur in six phases with the initial construction slated for the School District's high school and one of its elementary schools named Maine Memorial. The School District retained a construction management company, non-party LeChase Construction Services, LLC (hereinafter "LeChase"), and non-party architectural firm, King + King Architects, LLP, to plan the Project.
In July 2023, in lieu of using a more traditional competitive bidding process, the School District adopted a resolution to enter a "piggyback" contract with The Interlocal Purchasing System (hereinafter "TIPS") to facilitate work under phase one of the Project, which consisted of replacing a sewer line and installing a new parking lot at the high school for $2.5 million, during the summer recess. TIPS was created in 2002 by the State of Texas as a municipal agency that offers contracts and contractual proposals it has procured to other municipalities around the country. TIPS has grown from a regional entity into an organization with national scope through [*2]which other governmental units outside of Texas are able to "piggyback" their own construction needs onto contracts already let, or proposals secured, by TIPS. Once a municipality joins TIPS, it submits specifications for its project to TIPS, which then conducts a search of its approved contractors to find companies that can handle the member's project based on a scoring system. TIPS makes clear to contractors that their pricing proposals are intended for municipal piggybacking among TIPS's members. In essence, TIPS serves as a matchmaker between its municipal members and contractors based on project and performance information they provide to TIPS. Once TIPS matches a member with a contractor, those parties negotiate an agreement to perform the municipality's project pursuant to a pricing schedule the contractor provided to TIPS. The School District became a member of TIPS in 2021.
Based on its July 2023 resolution, the School District went through TIPS and retained Smith to perform phase one of its Project (work on the high school sewer line and parking lot) for $2.2 million. The School District did not solicit bids from other contractors for phase one, but rather contracted directly with Smith via TIPS. The School District was pleased with Smith's work on phase one that summer and in September 2023 it inquired with LeChase whether Smith could handle the work for phase two, which consisted of extensive air conditioning and HVAC renovations at Maine Memorial at a cost of $8.9 million. The School District also decided to proceed with an additional component of phase two, namely the construction of four classrooms at Maine Memorial for $4.5 million. The plans for phase two were submitted to the NYS Education Department (hereinafter "NYSED") for review and approval, with construction planned to occur during the summer and fall of 2024.
As of March 2024, the School District was still awaiting NYSED's approval to proceed with phase two of the Project. In fact, NYSED's approval had been pushed back to late May. The School District became concerned that if phase two could not be timely commenced for the 2024 construction season, the Project would be put off until 2025 and result in increased costs. Accordingly, the School District decided to work through TIPS to secure a contractor, namely Smith, for the HVAC portion of phase two. In addition, LeChase reached out to eighteen contractors in the areas of general construction, plumbing, electrical and maintenance about the classroom construction portion of phase two, as required by General Municipal Law (hereinafter "GML") § 101.
NYSED approval for the HVAC portion of phase two was delayeduntil June 26, 2024. On July 2, 2024, the School District awarded the contract for said work to Smith via TIPS and Smith began work shortly thereafter. As of December 2024, when the present motion was argued, Smith had completed approximately 44% of the HVAC work, amounting to nearly $4 million under its contract with the School District.[FN1]

This petition was filed on September 23, 2024. The court signed the order to show cause
on September 24, 2024 setting the return date for oral argument to November 13, 2024, which was subsequently adjourned to December 18, 2024. On December 4, 2024, the School District and Smith filed their respective verified answers to the petition with papers in opposition. The court heard oral argument of counsel on December 18, 2024, and reserved decision.
DISCUSSION
The discrete issue at the core of this proceeding is whether "piggybacking" is a permissible means to award a public works contract under GML § 103 (16) and, if so, whether the School District complied with the required steps and safeguards in awarding the HVAC component of phase two to Smith. If either of those questions is answered in the negative, the court must determine what remedy is appropriate concerning the contract awarded to Smith.
I. STATUTORY CONSTRUCTION
Before analyzing the parties' arguments regarding GML § 103 (16) the court must determine the meaning of the key phrases "public works," "public works contract," and "public works project". As a starting point, the court notes that GML Article 5-a is entitled "Public Contracts" and sets out the requirement and process for competitive bidding by municipalities. GML § 100 contains the definitions for Article 5-a and states that school districts are a political subdivision subject to competitive bidding requirements, but it has no definitions for the terms "public works," "public works contract" or public works project".[FN2]

Lacking statutory guidance, the court is left to interpret the meaning of "public works," "public works contracts," and "public works projects" as they are used in the context of GML Article 5-a and related statutes, as well as common usage and comprehension. The Court of Appeals has stated:
"[w]ell-established rules of statutory construction direct that [the court's] analysis begins with the language of the statute. This is because the primary consideration is to ascertain the legislature's intent, of which the text itself is generally the best evidence. A court should construe unambiguous language to give effect to its plain meaning. Further, a statute must be construed as a whole and its various sections must be considered together and with reference to each other."
(Colon v Martin, 35 NY3d 75, 78 [2020] [internal quotations and citations omitted]).
Lacking any specific definition, the court will define the terms "public works," "public works contracts," and "public works projects" to mean construction or repair projects undertaken by municipalities on their infrastructure that are subject to the competitive bidding process. The court finds this interpretation consistent with GML § 101 (1), entitled "Separate Specifications for Certain Public Work" and applies to the "erection, construction, reconstruction or alteration of buildings," and the plain meaning of those terms.
[*3]II. GML § 103 (16)
It is through the foregoing lens that the court will analyze GML § 103 (16), which
provides, in pertinent part:
"[n]otwithstanding the provisions of subdivisions one, two and three of this section, and section one hundred four of this article, any officer, board or agency of a political subdivision or of any district therein authorized to make purchases of apparatus, materials, equipment or supplies, or to contract for services related to the installation, maintenance or repair of apparatus, materials, equipment, and supplies, may make such purchases, or may contract for such services related to the installation, maintenance or repair of apparatus, materials, equipment, and supplies, as may be required by such political subdivision or district therein through the use of a contract let by the United States of America or any agency thereof, any state or any other political subdivision or district therein if such contract was let to the lowest responsible bidder or on the basis of best value in a manner consistent with this section and made available for use by other governmental entities . . . ."
The purpose of GML § 103 (16) is to permit municipalities within New York to "piggyback" on contracts previously entered by federal, state, or local governments to buy "apparatus, materials, equipment or supplies, or to contract for services related to the installation, maintenance or repair of apparatus, materials, equipment, and supplies . . ." so long as the underlying contract was let to the lowest responsible bidder or provided the best value "in a manner consistent with this section," and expressly provides that its terms are available to other governmental entities. Thus, GML § 103 (16) allows New York municipalities to forego the formalities of the competitive bidding process if certain conditions have been met, which the court will now examine.
First, GML § 103 (16) expressly applies to the "purchase" of specific classes of things, namely apparatus, materials, equipment and supplies, as well as service contracts related to those specific things. It does not identify or include the "purchase" of public works, public works contracts, or public works projects, which the court interprets as construction or repair projects undertaken by municipalities on their infrastructure and are clearly distinct in nature and scope from apparatus, materials, equipment, and supplies. The court views the plain language both included and excluded from GML § 103 (16) as deliberate choices by the legislature to define and limit what is available for piggybacking.[FN3]
In the court's view, public works, public works contracts, and public works projects are not available for piggybacking based on the plain language and meaning of the statute. The contracts for such projects or works can only be let [*4]after strict compliance with the procedures set out in GML §§ 101 and 103 (1) and (2), and other applicable provisions. Such an interpretation of GML § 103 (16) accords with GML § 101, entitled "Public Works" and sets out the framework for bidding building projects, as opposed to buying things, such as apparatus, materials, equipment and supplies and services related thereto.
Second, GML § 103 (16) requires that the contract to be piggybacked must have been let "in a manner consistent with this section[,]" namely GML § 103. This language is key because it confirms that subsection (16) is a narrowly tailored exception to, not an exemption from, the requirements of GML § 103, which includes subsections (1), requiring sealed bids, and (2), requiring public advertising of projects (Jericho Water Dist. v One Call Users Council, Inc., 10 NY3d 385, 391 [2008] ["exceptions to generally applicable statutory provisions should be strictly construed [citation omitted]"]). Respondents' focus on the "notwithstanding" clause that introduces subsection (16) is too expansive. The court interprets the "notwithstanding" introduction to mean that municipalities can contract for apparatus, materials, equipment, supplies, and related services if another municipality has already gone through the underlying competitive bidding process to procure those items. To interpret GML § 103 (16) as respondents urge would give municipalities a free pass for public work projects that the statute does not provide (Luck Brothers, Inc. v City of Plattsburgh, Sup Ct, Clinton County, December 5, 2012, Ryan, J., index No. 12-0702; annexed as Appendix to NYSCEF Doc No. 20).[FN4]

The court finds that respondents' reliance on NYSED's administrative decision in Appeal of Crisorio, 63 Ed Dept. [Decision No. 18405], is misplaced for the reasons set forth above, namely that it reads GML § 103 (16) too broadly and includes public work contracts within the exception provided for purchase and related service contracts. A review of pertinent publications of the NYS Comptroller supports the court's conclusion. For example, in its guide for local governments entitled "Seeking Competition in Procurement," the Comptroller states "it appears that services, other than those necessary for the completion of a public works contract governed by the prevailing wage requirements of article 8 of the Labor Law (e.g., building construction), are now generally categorized under the statute as 'purchase contracts' and not 'contracts for public work (emphasis added)'" (https://www.osc.ny.gov/files/local-government/publications/pdf/seeking-competition-in-procurement.pdf, n 8). Furthermore, in its October 2021 memorandum entitled "'Piggybacking' Law - Exception to Competitive Bidding," the Comptroller analyzes municipalities interactions with "vendors" (NYSCEF Doc No. 13). The court deems the Comptroller's use of the term "vendor" to mean suppliers of apparatus, materials, equipment, supplies and services related thereto, as opposed to "contractors" seeking to erect, construct, reconstruct or alter buildings through works of plumbing and gas fitting, steam heating, hot water heating, ventilation and air conditioning apparatus, or electric wiring and standard illumination fixtures.
Based on the foregoing, the court finds that the School District's award of the phase two contract to Smith was improper because the use of TIPS was an impermissible use of [*5]piggybacking for a public works project.
The court has considered the remaining arguments and finds them to be without merit.[FN5]

III. REMEDY
Next, the court must now address the appropriate remedy for the improperly let contract by the School District to Smith. Initially, the court rejects respondents' position that this proceeding should be barred by the doctrine of laches or found to be prejudicially late. The court finds the petition was filed well within the limitations period provided by CPLR § 217 (1) and there is insufficient proof that petitioners calculated their filing to cause undue harm to
respondents.[FN6]

That being said, the court finds that disrupting the Project, which is nearly halfway to completion, would not be in the public interest, nor would imposing any type of monetary award against the School District or Smith, especially when there have been no allegations, let alone proof, that the Project has been performed inefficiently or in a manner otherwise injurious to the taxpayers. In addition, the court finds there is no evidence of malfeasance on respondents' part concerning the letting of the contract to Smith.
Accordingly, the court exercises its discretion and holds that Smith may complete the HVAC work on phase two as contracted without disgorgement, payment of attorney's fees, or other award against respondents. However, the School District is enjoined from using TIPS, or other similar consortiums or processes, to award any further public work, as set forth hereinabove, on the Project. Rather, it must follow the competitive bidding procedures set out in GML § 101 and pertinent sections of GML § 103.
CONCLUSION
Accordingly, it is hereby ORDERED and ADJUDGED that the petition is GRANTED to the extent of finding that the contract between the School District and Smith was improperly let and the School District is enjoined from using TIPS, or other similar consortiums or processes, to award any further public work portions of the building project. The remainder of the relief sought in the petition is DENIED.
This constitutes the order, judgment and decision of the court.
HON. OLIVER N. BLAISE, III
Justice, Supreme Court
Dated: February 13th, 2025
Binghamton, New York

Footnotes

Footnote 1:As of the argument of this motion, NYSED had yet to approve the classroom construction portion of phase two.

Footnote 2:The court broadened its search to other statutes to find a working definition of these key phrases. While the court located references to "public works," "public works contract," or "public works project" in other provisions, such as GML § 103 (1) and (15) (a), the court finds those statutory uses inapplicable to the situation here. Some of the usage of those terms in GML §§ 103 (1) and (15) cite Finance Law § 163 and Labor Law Article 8. The former contains no mention of public works, public works contracts or public works projects, while the latter, entitled "Public Work," provides standards for setting and monitoring wages and safety standards on state or municipal projects. The court finds these statutes provide limited guidance on the issue involved in the present matter, namely the analysis of GML § 103 (16).

Footnote 3:"The maxim expressio unius est exclusio alterius applies in the construction of the statutes, so that where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded. In other words, the doctrine is an interpretive maxim that the inclusion of a particular thing in a statute implies an intent to exclude other things not included. The maxim is typically used to limit the expansion of a right or exception - not as a basis for recognizing unexpressed rights by negative implication" (Colon, 35 NY3d at 78 [internal quotations and citations omitted]).

Footnote 4:While the Luck Brothers case predates the enactment of GML § 103 (16), it addresses substantially the same issue, namely whether municipalities can piggyback their public work projects onto county contracts under GML § 103 (3). The Luck Brothers court concluded they could not because GML § 103 (3) draws a distinction between purchase and related service contracts and public works, just as this court finds here regarding GML § 103 (16).

Footnote 5:Notably, the parties spent significant attention contesting whether or how the TIPS process complied with the requirements of GML §§ 101 and 103 (1) and (2), but the court need not resolve same based on its finding that GML § 103 (16) does not allow piggybacking for public works projects.

Footnote 6:The record reflects there was communication between the parties during the time that the School District was awaiting NYSED approval for phase two of the project, and thereafter. Petitioners raised their concerns about the use of piggybacking to award public works contracts, which they felt denied them the opportunity to compete for work, to the School District and respondents were researching same. For these reasons, any laches argument must fail.